# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 14-cr-00010-1 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| PRECIOUS W. HOUSE ) | |

## MEMORANDUM OPINION AND ORDER

After a six-day jury trial, Defendant Precious House was convicted of six counts of bank fraud in violation of 18 U.S.C. § 1344. Before the Court is House's Motion for Judgment of Acquittal or for New Trial ("Post-Trial Motion"). (Dkt. No. 284.) For the following reasons, the Post-Trial Motion is denied.

## BACKGROUND

On May 1, 2014, a Grand Jury returned a seven-count Superseding Indictment against House, Brian Hughes, Murchael Turner, Keith Foster, and Crystal D. Williams, charging them for their roles in a scheme to defraud credit unions by submitting fraudulent automobile loan applications. House was named in all seven counts, including six counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of making false statements in a loan application in violation of 18 U.S.C. § 1014.

Prior to trial, House filed a motion to dismiss the charges against him ("Motion to Dismiss"). (Dkt. Nos. 186, 214). In the Motion to Dismiss, House argued that FBI Special Agent Lee Evans, the case agent for an investigation of House for an unrelated alleged mortgage fraud scheme, harbored personal animus against House due to the fact that House "had a long time common law relationship" with a woman to whom Special Agent Evans is related. (Mot. to Dismiss ¶ 2, Dkt. No. 186.) According to House, Special Agent Evans, motivated by this personal animus, engaged in misconduct that warranted dismissal of the indictment against

House in this case. (*Id.* ¶ 15.) The Court construed the Motion to Dismiss as arguing that House had been selectively or vindictively prosecuted, and denied it by written order dated March 5, 2015. (Dkt. No. 250.)

House, Hughes, and Turner were subsequently tried together.[1] Hughes initially represented himself *pro se*, although the Court appointed standby counsel for him. (Dkt. No. 54.) Prior to trial, Hughes, both during court appearances and in numerous filings, raised a number of jurisdictional defenses commonly associated with the "sovereign citizen" movement, which the Court summarily denied as lacking any legal basis. (*See generally* Dkt. No. 181.) Prior to trial, the Court repeatedly warned Hughes that he would be excluded from the courtroom and his standby counsel directed to step in on his behalf, if he raised his baseless jurisdictional objections in front of the jury, engaged in obstructive behavior, or otherwise failed to comply with the Court's instructions. Despite these warnings, during the first day of jury selection, Hughes obstructed proceedings by refusing to sit down when instructed and persisting in raising his jurisdictional objections in front of the *venire*. The Court subsequently excluded Hughes from the courtroom for the remainder of the day and directed his standby counsel to represent him. At the beginning of each subsequent day of trial, the Court engaged in a colloquy with Hughes outside of the presence of the jury. During each of these colloquies, Hughes indicated that he would not comply with the Court's instructions and would persist in raising his jurisdictional defenses in the jury's presence. Accordingly, the Court excluded Hughes from the courtroom on each and every day of trial. Hughes observed the trial from an adjacent room by means of a real-time video and audio feed, while his standby counsel represented him in the courtroom.

---

[1] Foster and Williams pleaded guilty to the charges against them, and Williams testified at trial against House, Turner, and Hughes.

The trial lasted six days, during which the Government introduced into evidence over 200 exhibits and put on over 20 witnesses (including House's co-defendant Williams). Then, on March 19, 2015, the jury found House guilty on six counts of violating 18 U.S.C. § 1344.[2] In addition, Hughes was found guilty on four counts of violating 18 U.S.C. § 1344 and one count of violating 18 U.S.C. § 1014. The jury was unable to return a verdict as to Turner, who was charged with a single count of violating 18 U.S.C. § 1344, and thus the Court declared a mistrial with respect to him. House now challenges his conviction. He argues that (1) the Court erred in denying his Motion to Dismiss; (2) the jury's verdict against House was contrary to the evidence; (3) there was a fatal inconsistency in the jury verdict because the jury failed to convict Turner on Count VII but convicted House of the same count; and (4) trying House with Hughes prejudiced the jury against House.

## DISCUSSION

When considering a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, a district court must determine:

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bear[ing] in mind that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences."

*United States v. Hagan*, 913 F.2d 1278, 1281 (7th Cir. 1990) (quoting *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989)). A conviction must be upheld if, after viewing the evidence in the light most favorable to the prosecution, "***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *See also United States v. Doody,* 600 F.3d 752, 754 (7th Cir. 2010).

---

[2] Prior to jury deliberations, the Government voluntarily dismissed Count V of the Superseding Indictment as to House, which alleged that he violated 18 U.S.C. §1014.

3

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Motions for new trials in criminal cases are addressed to the sound discretion of the trial court. *United States v. Woolfolk*, 197 F.3d 900, 904 (7th Cir. 1999). Such motions are not favored, however, and should be granted sparingly and only with great caution and in exceptional circumstances. *Reed*, 875 F.2d at 113 (quoting *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985)). Such motions should be granted only when there has been a miscarriage of justice or the weight of the evidence is heavily against the verdict. *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir. 1999). In addition, to prevail on a motion for a new trial, a defendant must demonstrate that substantial prejudicial error occurred during the trial. *United States v. Owens*, 424 F.3d 649, 653 (7th Cir. 2005).

## I. House's Motion to Dismiss Was Properly Denied

House first contends that the Court erred in denying his Motion to Dismiss, renewing his argument that the Court should have dismissed the case based on the conduct of Special Agent Evans. But House fails to cite any legal authority that would allow the Court to grant the requested relief on this basis.

House contends that he was selectively or vindictively prosecuted due to Special Agent Evans's personal animus against him. Yet he fails to offer any evidence that would raise a reasonable doubt that the Government acted properly in seeking the indictment. *See United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996) (explaining that to obtain a hearing on a claim of vindictive or selective prosecution, a defendant must "offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment."). Furthermore, House again fails to present any evidence that Special Agent Evans's alleged personal animus

caused his prosecution. *See id.* at 1034-35. Finally, House argues that Evans, "for reasons of personal bias," caused the bank accounts of Rolling Auto to be closed, which, according to House, created the financial problems that caused much of the loss in this case. But it would have been House's burden of proof to establish such prosecutorial misconduct, *see id.* at 1034, and House offered no evidence at trial to support of this theory. Accordingly, the Court rejects House's claim that it erred in denying his Motion to Dismiss.

## II. The Jury's Verdict Was Supported by Sufficient Evidence

House next argues generally that the Government failed to prove his guilt beyond a reasonable doubt. To prove House violated 18 U.S.C. § 1344, the Government was required to establish the following elements beyond a reasonable doubt:

1. there was a scheme to defraud a financial institution or to obtain money and funds owned by, or in the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises as charged in the indictment;

2. House knowingly executed the scheme;

3. House acted with the intent to defraud;

4. the scheme involved a materially false or fraudulent pretense, representation, or promise; and

5. at the time of the charged offense the deposits of the financial institution were insured by the National Credit Union Share Insurance Fund.

18 U.S.C. § 1344; Seventh Circuit Pattern Criminal Jury Instruction 4.01.

In challenging the jury's verdict, House argues that the Government failed to prove the first four elements. The Court disagrees. Based on the Government's evidence, a reasonable trier of fact could have found, beyond a reasonable doubt, that House, along with Hughes, Turner, Foster, Williams, and others, was part of a common scheme to obtain money from credit unions by falsely representing that those funds would be used to purchase automobiles. The evidence

adduced at trial showed that House helped to execute this scheme by providing vehicle identification numbers ("VINs") for automobiles that he knew would not be delivered for sale, so that his co-defendants could provide those VINs to credit unions to mislead them into thinking that their loans were secured by the value of those automobiles. House, along with Hughes, would then cash the checks issued by the credit unions, provide funds to the borrower, and take a cut off the top of the disbursed funds. Based on the evidence presented to the jury, a rational trier of fact could find, beyond a reasonable doubt, that Hughes intended to defraud the credit unions, as the checks that House cashed bore the VINs of the cars that were supposed to secure the loans. House protests that there was no evidence that he had any contact with any of the persons who borrowed money from the defrauded banks and credit unions. Even if that were so,[3] the Government was under no obligation to prove such contact as part of its case.

Accordingly, the Court denies the Post-Trial Motion to the extent it argues that the jury verdict was contrary to the evidence.

### III. The Jury's Verdict on Count VII Was Not Improper

House also contests his conviction with respect to Count VII, which alleged that House and Turner caused a check for approximately $29,919.51 to be issued by Sherwin-Williams Credit Union in the name of House's company, Rolling Auto, Inc., purportedly for the purchase of a 2011 Nissan Infiniti M37. (*See* Superseding Indictment ¶¶ 39-42, Dkt. No. 79.) The jury failed to reach a verdict against Turner on Count VII even while convicting House on that count. House suggests that this result is fatally inconsistent. However, it is a "well settled rule that an irreconcilable jury verdict does not warrant reversal of a criminal conviction." *United States v.*

---

[3] House's company, Rolling Auto, endorsed a number of checks from credit unions that warranted that the funds were being used to purchase the luxury automobiles for which Hughes provided the VINs. *See, e.g.*, Government Exhibits FH-5, MB-4. As discussed above, the Government's evidence shows that there was never any intention for those vehicles to be purchased.

6

*Walker*, 9 F.3d 1245, 1248 (7th Cir. 1993) (citing *United States v. Powell*, 469 U.S. 57, 69 (1984)).

Furthermore, the Government introduced sufficient evidence from which a reasonable trier of fact could find House guilty beyond a reasonable doubt on Count VII. The Government introduced into evidence a vehicle purchase order that was submitted to Sherwin-Williams and fraudulently claimed Mickey Banks was buying a car from Rolling Auto. (Ex. MB-2). The Government also introduced into evidence a check issued by Sherwin-Williams, payable to Rolling Auto Inc., that bears a VIN that matches the VIN stated on the purchase order. (Ex. MB-4). The check was endorsed by Rolling Auto, and contains language indicating that the payment "constitutes full payment for property described on face of draft" and that the payees agreed to title the vehicle and provide Sherwin-Williams with a first lien. (*Id.*) The Government also adduced evidence that House deposited the check into his TCF Bank account, met personally with Banks, and wrote Banks a $20,943.66 check instead of providing him with the automobile. (*See* Ex. MB-5.) Because this and other evidence could lead a rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, House is not entitled to an acquittal or a new trial based on the jury's failure to convict Turner on the same count.

### IV. House Received a Fair Trial

Finally, House argues that he did not receive a fair trial because he was tried with Hughes, who persisted in raising meritless jurisdictional arguments and disobeyed the Court's instructions in front of the jury. According to House, Hughes's "disrespect for the Court . . . tainted some of the *venire* and could not have helped [but] taint the panel that finally sat." (Post-Trial Mot. at 3, Dkt. No. 284.)

The Court finds no basis to conclude that the jury was tainted. During *voir dire*, potential jurors were questioned about whether Hughes's brief appearance in the courtroom would influence their decisions and anyone with reservations was excused. Several times during trial, after the jury was empaneled, the Court instructed the jurors not to consider Hughes's absence from the courtroom and to consider the evidence against each defendant separately. During jury instructions, the Court provided an instruction that the jury must consider each defendant, and any evidence concerning that defendant, separately. (*See* Jury Instructions at 24, Dkt. No. 272.) The Court gave another instruction that Hughes was excused from being present in the courtroom and that this fact "should not enter into your deliberations in any way." (*Id.* at 12.) Juries are presumed to follow instructions, and House offers nothing to overcome that presumption here. *See United States v. Keskes*, 703 F.3d 1078, 1086 (7th Cir. 2013).[4] Accordingly, House is not entitled to an acquittal or a new trial based on the fact that he and Hughes were tried together.

**CONCLUSION**

For the foregoing reasons, House's Post-Trial Motion (Dkt. No. 284) is denied.

Dated: May 9, 2016

_____
Andrea R. Wood
United States District Judge

---

[4] To the contrary, the fact that the jury found House and Hughes guilty of the charges against them while failing to reach a verdict on the charge Turner would suggest that the jury did consider the evidence against each defendant separately and did not hold Hughes's conduct against his co-defendants.

8